## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBORAH R. FABIAN, | *  CIVIL ACTION NO. |
| Plaintiff, | * |
| v. | * |
| | *  AUGUST 8, 2012 |
| HOSPITAL FOR CENTRAL CONNECTICUT, DELPHI HEALTHCARE PARTNERS, INC., | * |
| Defendants. | * |

## COMPLAINT

### Jurisdiction and Venue

1. Jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. The action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, codified at 42 U.S.C. § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), codified at Conn. Gen. Stat. § 46a-60 *et seq.*

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b) in that Plaintiff Deborah Fabian's ("Fabian") claims arose in this district, substantial actions occurred in this district and the job she sought and was denied was located in this district.

4. Supplemental jurisdiction over Fabian's state law claims is invoked pursuant to 28 U.S.C. § 1367 as her claims arise out of the same transaction and occurrences as the plaintiff's federal claims.

## EXHAUSTION OF REMEDIES

5. Fabian filed a timely claim with the Connecticut Commission on Human Rights and Opportunities (CHRO) and the Equal Employment Opportunity Commission (EEOC).

6. With respect to her claims against Delphi Healthcare Partners, Inc. ("Delphi"), the CHRO issued a "Release of Jurisdiction" dated May 25, 2012, and the EEOC issued a "Right to Sue" Letter dated July 23, 2012. (Ex. A.)

7. With respect to her claims against the Hospital for Central Connecticut ("HCC" or the "Hospital"), the CHRO issued a "Release of Jurisdiction" dated May 25, 2012, and the EEOC issued a "Right to Sue" Letter dated July 23, 2012. (Ex. B.)

8. All conditions precedent to this lawsuit have been fulfilled.

## PARTIES

9. Deborah Fabian (hereafter referred to as "Fabian") is a 63 year old transgender female who resides at 173 Packard Hill Road, Ashburnham, Massachusetts.

10. Fabian was previously known as David Fabian prior to her final, formal transition to female in or around October 2011.

11. Prior to that date, Fabian had lived as a transgender female, but was professionally known as David.

12. Delphi Healthcare Partners, Inc. ("Delphi"), is a North Carolina corporation that provides physician placement services to individual physicians and hospitals or related medical care providers.  Delphi's headquarters are located in Morrisville, North Carolina.   Delphi does business in all 50 states of the United States, including

Connecticut.   Plaintiff was a prospective job candidate who Delphi sought to place in a hospitalist position at one or more hospitals.

13. Delphi employs more than 15 employees.

14. HCC is a hospital established under Connecticut law with a principal place of business located at 100 Grand Street, New Britain, Connecticut.

15. HCC employs more than 15 employees.

## FACTS

16. Fabian applied for an Orthopedic Hospitalist position at HCC through Delphi.

17. Fabian was rejected for that position based on her transgender status.

18. That adverse employment decision was based on discriminatory intent and violates the Connecticut Fair Employment Practices Act and Title VII of the Civil Rights Act of 1964.

19. Fabian's sex is male, however, Fabian was in the process of transitioning to female and had been publicly presenting herself as a female at all times applicable to this matter.

20. Fabian considers herself to be a transgender person.

21. At all times relevant to the facts set forth herein, her name was David R. Fabian.

22. Fabian legally changed her name to Deborah R. Fabian in or around October 2011.

23. Fabian is a medical doctor, with a specialty in orthopedic surgery.

24. Fabian attended medical school at Hahnemann Medical College (renamed Drexel University) in Philadelphia.

25. Fabian is Board Certified in orthopedic surgery.

26. During her thirty plus years of practice, Fabian has never had any disciplinary actions initiated against her.

27. In or around May of 2011, Fabian began the process of applying for an orthopedic hospitalist position at HCC in New Britain, Connecticut, offered through Delphi.

28. After extensive interaction with Delphi and HCC, including provision of background information, qualifications, an interview in North Carolina and numerous emails and phone conversations, Fabian was advised that she was to be hired for the position.

29. However, during a meeting with HCC physicians on June 14, 2011, Fabian advised those in attendance that she intended to transition from male to female in the near future and that when Fabian began her position with HCC she would be working as a women, Deborah Fabian.

30. Thereafter, Fabian was advised that she would not be retained.

31. Fabian was advised that the decision not to hire her was based on two reasons: (1) that Fabian was not trained on the Hospital's new computer records system; and (2) that there were concerns Fabian was not well-suited to handle late night emergency calls.

32. Neither of these issues was raised in the extensive interview and background investigation.

33. The defendants discriminated against Fabian by refusing to hire Fabian after her disclosure to them that Fabian was a transgender individual intending to transition from male to female.

34. Delphi is a North Carolina company and describes itself as follows on its website (www.delphihp.com):

> Delphi Healthcare Partners is a contract physician staffing and management company, formed in response to an evolving physician practice environment in which many primary care physicians no longer wish to admit and follow patients in the hospital and specialty physicians no longer want to provide ED on-call backup coverage. The combination of these two physician practice style changes has created a need for innovative solutions to both ambulatory and hospital-based patient care services

35. Fabian contacted Delphi in response to a posting on its web site indicating they were looking for orthopedic surgeons in New Britain, Connecticut.   The posting stated as follows:

> Orthopaedic Hospitalist Openings in New Britain, CT
>
> You read that right, Delphi Healthcare Partners, Inc. (www.delphihp.com) is seeking board certified Orthopaedists who want 240 days off a year. Selected physicians will work full-time in our hospitalist program in New Britain, CT. Part-time and start-up positions are also available. Responsibilities include On-Call Backup for patients presenting to the Emergency Department; receiving referrals and transfer patients for evaluation, treatment and surgery; and follow-up in a hospital sponsored clinic. Cover 10 24-hour days per month and receive excellent guaranteed compensation and malpractice with guaranteed tail coverage procured on your behalf. Leave the hassles of dealing with your private practice and administration to us. Be off when you are off without call and take control of your time again. Other locations throughout the nation are also available.

**CONTACT:** Contact the Orthopaedic Recruitment Team at 866.885.5522 or via e-mail at ortho@delphihp.com

36. Fabian learned after contacting Delphi that the position sought was at HCC. Fabian was not familiar with HCC, but was excited by the opportunity after doing research about the facility.

37. Fabian had numerous conversations with representatives from Delphi during the following weeks.

38. Fabian was advised by Delphi that her experience and credentials were more than adequate for the position.

39. On or about May 4, 2011, Fabian traveled to North Carolina for a meeting and interview with Delphi specifically related to the HCC position.

40. Fabian met with several Delphi representatives, including Gene Krumanocker, Delphi's Executive Vice President.

41. Fabian was told again after the interview that she was very qualified for the position.

42. Fabian was advised that she would have to go to HCC for a meeting prior to starting the position.

43. It was made clear to Fabian that this meeting was a formality and that the job was hers.

44. On June 6, 2011, Fabian received an e-mail from Delphi requesting certain information to process her Connecticut licensure and privileges application.

45. Fabian provided that information to Delphi with the understanding that HCC required it to process her privileges at the hospital.

46. Delphi qualifies as an employer under Title VII and the CFEPA and would have been one of Fabian's employers but for the discriminatory failure to hire her.

47. On or about June 10, 2011, Fabian was provided an Independent Contractor (Physician) Agreement ("Agreement") by Delphi, which Fabian was asked to review and execute.

48. That Agreement specifically stated that Fabian "will be providing Orthopedic Services to [HCC] as an Independent Contractor on the terms and conditions set out in this Agreement."

49. The Agreement stated that the term of her employment was to be "Three (3) years commencing on October 1, 2011, or at such other date as mutually agreed upon . . . ."

50. Fabian executed the Agreement on June 11, 2011, understanding that she would be starting this new position on October 1, 2011.

51. HCC also sent Fabian its privileging packet and the state licensing packet that Fabian filled out and mailed back as well as making additional comments on the paperwork in June.

52. HCC is a private hospital located in New Britain, Connecticut.

53. HCC qualifies as an employer under Title VII and the CFEPA and would have been one of Fabian's employers but for the discriminatory failure to hire her.

54. HCC purportedly prides itself on maintaining a diverse workforce.

55. The Hospital, an equal opportunity employer, supports the ideal of a multicultural workplace in its writings, if not in practice.

56. The Hospital's web site discusses the Power of Diversity:

When you care for a diverse population, a multicultural workforce can only strengthen patient care. At The Hospital of Central Connecticut, we recognize the value of workforce diversity and the opportunities it can bring.

Our strength lies in the people who work here - individuals with different backgrounds, different ideas, and different life experiences.

57. Fabian attended the meeting with HCC on June 14, 2011.

58. Fabian knew of two other physician applicants who were being considered for the positions at HCC.

59. HCC had positions available for several hospitalists, so the various applicants were not necessarily competing with each other for a single position.

60. The meeting went very well by all accounts.   No issues of concern were raised during the meeting.

61. Fabian met with the hospital's Chief Medical Officer, Dr. Steven Hanks, the chief of surgery and the chief of the emergency room, as well as several of the orthopedic surgeons on staff.

62. During the meeting, Fabian disclosed that she is a transgender individual and that Fabian intended to transition from male to female prior to starting her job at HCC.

63. Fabian spoke to Gene Krumanocker, an Executive Vice President at Delphi on June 15, 2011, and was advised that the meeting at HCC had gone very well.

64. No issues were raised during that conversation concerning her qualifications for the job at HCC.

65. Fabian advised Mr. Krumanocker that Fabian had disclosed her status to HCC during the meeting.

66. Krumanocker advised that as long as HCC was happy, he was happy.

67. Krumanocker told Fabian he received a phone call from one of the orthopedists at HCC who said what a wonderful interview it had been.

68. That same orthopedist also called Fabian that night, June 15, 2011, and told Fabian how impressed he had been by their meeting.

69. On July 6, 2011, Delphi notified Fabian that, despite her having agreed to the terms of the Agreement, HCC was not hiring her for the position.

70. Fabian learned thereafter that both of the other physicians who had been considered were formally offered the position.

71. Neither of those individuals is a transgender individual to the best of her knowledge.

72. In addition, Delphi placed a third surgeon who had been working at another hospital out of state and had not applied for the hospitalist position at HCC.

73. Upon information and belief, that third surgeon is not a transgender individual.

74. The reasons cited by Delphi and HCC for why Fabian was not hired were clearly pretextual and had not been raised as areas of concern prior to her disclosure of her transgender status.

75. There is no reason that Fabian would have been trained on HCC's new computer system prior to starting work at the hospital.

76. All new physicians are expected to receive training on the system after starting their jobs with the hospital.

77. There is no reason that Fabian could not have been trained on the system just as every other physician is trained on the system.

78. The concern related to her suitability to handle late night emergencies is similarly pretextual.

79. Fabian has been a practicing physician for more than thirty years.

80. Fabian has worked on an emergency basis for most of those years in some capacity.

81. Fabian has never had difficulty "handling" such situations.

82. Fabian has never been the subject of any complaints regarding her willingness to attend to all of her patients' needs including responding to emergency situations at any hour.

83. Fabian was the chairman of the department of surgery at Metrowest Medical Center in Framingham and Natick, Massachusetts.

84. Fabian led a department of over 70 surgeons of multiple specialties and one of the most difficult parts of that job was to maintain a full time call schedule for all specialties, which often required leading by example.

85. In that capacity, Fabian was constantly confronted with and dealt with the same "late night emergencies" that were now being cited as a concern.

86. The Agreement provided that Fabian was to be paid $3,500 for each 24 hour shift that Fabian worked at HCC.

87. It was expected that Fabian would work 10 twenty-four hour shifts per month.

88. Fabian understood the expected annual income to be approximately $420,000 based on that schedule.

89. Fabian and her wife relied upon the fact that the job at HCC had been offered to Fabian and that the meeting on June 15, 2011, was a formality.

90. In addition, the comments Fabian received after the meeting were not only positive they were glowing.

91. Based on the understanding that Fabian would be working in New Britain, Connecticut, Fabian and her wife put their home in Ashburnham, Massachusetts on the market.

92. The home sold in two weeks.

93. Fabian is an individual who lived as a man for most of her life knowing that she was truly female.

94. Fabian made the decision to transition to female knowing that it would be difficult and hard to accept by some people.

95. Part of the reason that Fabian decided to make this transition at this stage of her life was because Fabian was more comfortable with the protections to be provided to Fabian in her career from the discrimination that has existed in society towards transgender individuals.

96. Fabian understood that Connecticut was a state that provided a level of protection not necessarily provided in other states.

97. Fabian also understood that HCC was an institution at which Fabian would likely feel comfortable and be accepted for who Fabian was since it prides itself on its multicultural and diverse workforce.

98. As such, it was particularly disheartening for Fabian as an individual going through the initial stages of transition to be subjected to blatant discrimination.

99. As a result of the foregoing, Fabian has suffered, and will continue to suffer, mental, physical, and emotional distress, some of which has resulted and will continue

to result in the need for counseling, loss of enjoyment of life, damage to her personal and professional reputation, loss of salary and benefits, loss of earning capacity and other financial losses.

## Count One
### Discrimination in Violation of Title VII
### (Delphi Healthcare Partners, Inc.)

100. Fabian re-alleges and incorporates by reference Paragraphs 1 through 99 as if fully stated.

101.Fabian was qualified for the hospitalist position at HCC.

102. Fabian was subjected to an adverse employment action as a result of her transgender status.

103. Fabian's transgender status is synonymous with sex as set forth in Title VII of the United States Code and thus places Fabian in a protected class.

104. Delphi's failure to hire Fabian for the hospitalist position at HCC was directly related to her transgender status.

105. Fabian was treated differently than similarly situated, non-transgender applicants for the hospitalist position at HCC.

106. Delphi hired a non-transgender person for the hospitalist position.

107. Fabian has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

**Count Two**
**Discrimination in Violation of the Connecticut Fair Employment Practices Act**
**(Delphi Healthcare Partners, Inc.)**

108. Fabian re-alleges and incorporates by reference Paragraphs 1 through 107 as if fully stated.

109. Fabian was qualified for the hospitalist position at HCC.

110. Fabian was subjected to an adverse employment action as a result of her transgender status.

111. Fabian's transgender status places her in a protected class pursuant to the Connecticut Fair Employment Practices Act, Connecticut General Statutes § 46a-60, *et seq.*

112. Delphi's failure to hire Fabian for the hospitalist position at HCC was directly related to her transgender status.

113. Fabian was treated differently than similarly situated, non-transgender applicants for the hospitalist position at HCC.

114. Delphi hired a non-transgender person for the hospitalist position.

115. Fabian has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

## Count Three
## Discrimination in Violation of Title VII
## (The Hospital for Central Connecticut)

116. Fabian re-alleges and incorporates by reference Paragraphs 1 through 115 as if fully stated.

117. Fabian was qualified for the hospitalist position at HCC.

118. Fabian was subjected to an adverse employment action as a result of her transgender status.

119. Fabian's transgender status is synonymous with sex as set forth in Title VII of the United States Code and thus places Fabian in a protected class.

120. HCC's failure to hire Fabian for the hospitalist position at HCC was directly related to her transgender status.

121. Fabian was treated differently than similarly situated, non-transgender applicants for the hospitalist position at HCC.

122. HCC hired a non-transgender person for the hospitalist position.

123. Fabian has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

## Count Four
## Discrimination in Violation of the Connecticut Fair Employment Practices Act
## (The Hospital for Central Connecticut)

124. Fabian re-alleges and incorporates by reference Paragraphs 1 through 123 as if fully stated.

125. Fabian was qualified for the hospitalist position at HCC.

126. Fabian was subjected to an adverse employment action as a result of her transgender status.

127. Fabian's transgender status places her in a protected class pursuant to the Connecticut Fair Employment Practices Act, Connecticut General Statutes § 46a-60, *et seq.*

128. HCC's failure to hire Fabian for the hospitalist position at HCC was directly related to her transgender status.

129. Fabian was treated differently than similarly situated, non-transgender applicants for the hospitalist position at HCC.

130. HCC hired a non-transgender person for the hospitalist position.

131. Fabian has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this Court:

1. Take jurisdiction over this matter;
2. Award compensatory and punitive damages as allowed by statute;
3. Award attorney's fees and costs, including expert witness expenses;
4. Grant Plaintiff a trial by jury;
5. Grant such other and further relief as may be just and equitable.

PLAINTIFF,
DEBORAH FABIAN

BY:_____

Theodore Heiser
ct23807
Sullivan Heiser, LLC
4 Post Office Square
Clinton, Connecticut 06413
860-664-4440 (t)
860-664-4422 (f)
twh@sullivanheiser.com

# Ex. A

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Deborah Fabian
151 Pinewood Driver
Gardner, MA 01440

From: Boston Area Office
John F. Kennedy Fed Bldg
Government Ctr, Room 475
Boston, MA 02203

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2012-00180 | Anne R. Giantonio, Intake Supervisor | (617) 565-3189 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Robert L. Sanders,
Area Office Director

JUL 2 3 2012
*(Date Mailed)*

Enclosures(s)

cc:

DELPHI HEALTHCARE PARTNERS, INC.
170 Southport Drive
Morrisville, NC 27560

Theodore W. Heiser, Esq.
SULLIVAN HEISER, LLC
28 Main Street
Essex, CT 06426

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

**Deborah Fabian**
COMPLAINANT

vs.                                             **DATE:  May 25, 2012**

**Delphi Healthcare Partners, Inc.**
RESPONDENT

CHRO Case No.  1210162
EEOC No.  16A-2012--00180

## RELEASE OF JURISDICTION

Pursuant to the request for a release of jurisdiction, the Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint in accordance with CONN. GEN. STAT. § 46a-101.  The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business.  If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

**A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

In granting this release, the Commission expressly finds in accordance with CONN. GEN. STAT. §§ 46a-100 and 46a-101(b) that all conditions precedent to the issuance of the release have been met.  The complaint was timely filed under CONN. GEN. STAT. § 46a-82 and the complaint has been pending for a period of not less than 180 days.  The complaint is not currently scheduled for public hearing nor is there reason to believe that the complaint will be resolved within a period of 30 days from the date the Commission received the request.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

With the granting of this release of jurisdiction, the Commission administratively dismisses this complaint in accordance with CONN. GEN. STAT. § 46a-101(d) without cost or penalty to any party.

Very truly yours,

Robert J. Brothers, Jr.
Executive Director

cc:      Complainant's Attorney, Theodore W. Heiser, via email:  heiserlaw@gmail.com
         Respondent's Attorney, Elizabeth K. Acee, via email:  elizabeth.acee@leclairryan.com
         Respondent's Contact, Gene Krumanocker, via email:  gkrumanocker@delphihp.com

# Ex. B

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: **Deborah Fabian**<br>**151 Pinewood Drive**<br>**Gardner, MA 01440** | From: **Boston Area Office**<br>**John F. Kennedy Fed Bldg**<br>**Government Ctr, Room 475**<br>**Boston, MA 02203** |

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16A-2012-00179** | **Anne R. Giantonio,**<br>**Intake Supervisor** | **(617) 565-3189** |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| X | More than 180 days have passed since the filing of this charge. |
|---|---|
| | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| X | The EEOC is terminating its processing of this charge. |
| | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

| | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Robert L. Sanders,**
**Area Office Director**

**JUL 2 3 2012**

*(Date Mailed)*

Enclosures(s)

cc:

**HOSPITAL FOR CENTRAL CONNECTICUT**
**100 Grand Street**
**New Britain, CT 06050**

Theodore W. Heiser, Esq.
SULLIVAN HEISER, LLC
28 Main Street
Essex, CT 06426

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

**Deborah Fabian**
COMPLAINANT

vs.                                               **DATE:** May 25, 2012

**Hospital of Central Connecticut**
RESPONDENT

CHRO Case No. 1210161
EEOC No. 16A-2012-00179

## RELEASE OF JURISDICTION

Pursuant to the request for a release of jurisdiction, the Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint in accordance with CONN. GEN. STAT. § 46a-101. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

**A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

In granting this release, the Commission expressly finds in accordance with CONN. GEN. STAT. §§ 46a-100 and 46a-101(b) that all conditions precedent to the issuance of the release have been met. The complaint was timely filed under CONN. GEN. STAT. § 46a-82 and the complaint has been pending for a period of not less than 180 days. The complaint is not currently scheduled for public hearing nor is there reason to believe that the complaint will be resolved within a period of 30 days from the date the Commission received the request.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

With the granting of this release of jurisdiction, the Commission administratively dismisses this complaint in accordance with CONN. GEN. STAT. § 46a-101(d) without cost or penalty to any party.

Very truly yours,

Robert J. Brothers, Jr.
Executive Director

cc:     Complainant's Attorney, Theodore W. Heiser, via email: heiserlaw@gmail.com
        Respondent's Attorney, David L. Metzger, via email: dmetzger22@comcast.net
        Respondent's Contact, Elizabeth A. Lynch, via email: elynch@thocc.org

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DEBORAH FABIAN,                          *     CIVIL ACTION NO.
                                         *
              Plaintiff,                 *
                                         *
       v.                                *
                                         *     AUGUST 8, 2012
HOSPITAL FOR CENTRAL                     *
CONNECTICUT, DELPHI HEALTHCARE           *
PARTNERS, INC.,                          *
                                         *
              Defendants.

---

### JURY TRIAL CLAIM

The plaintiff, Deborah Fabian, claims a trial by jury on all claims triable by jury.

PLAINTIFF,
DEBORAH FABIAN

BY:_____
Theodore Heiser
ct23807
Sullivan Heiser, LLC
4 Post Office Square
Clinton, Connecticut 06413
860-664-4440 (t)
860-664-4422 (f)
twh@sullivanheiser.com